## PIERCE *v.* THE J. R. P. MOORE.

*(District Court, E. D. North Carolina.* December, 1890.)

1. COLLISION—VESSEL AT FAULT—DIVISION OF DAMAGES.

In case of a collision between vessels, one of which has been guilty of a clear fault, there must also be clear evidence of contributing fault on the part of the other, to divide damages.

2. SAME—VESSEL AT ANCHOR—LIGHTS.

A schooner collided with a yacht, which was at anchor in the channel of a river. There was no one on the deck of the yacht. The mate whose watch it was was in the mess-room, and probably asleep. A light had been burning during the night. The mate testified that he saw it an hour before the collision, that it was shining on his feet, so that he could not have missed, and that he had been absent from the deck only 10 minutes. On the schooner the master was on deck, the mate on the lookout, and a man at the wheel, and they all testified that there was no light on the yacht. A witness who lived near the river had seen the yacht at anchor the day before, and noticed her light during the night. Two hours before the collision he had looked for the light, and it was gone. *Held,* that it was clear that the yacht had kept neither anchor light nor anchor watch as required by statute.

3. SAME—DIVISION OF DAMAGES.

It was a very dark night, and the yacht was at anchor in the channel 25 miles from any frequented port. An expert testified that the lookout on the schooner ought to have seen the yacht at a distance of 200 or 300 yards, and that, if he had seen her at 300 yards, the schooner ought to have cleared the yacht. The schooner was sailing at the rate of 6 knots, and would have covered 300 yards in some seconds more than a minute. *Held,* that the evidence of fault on the part of the schooner was not clear enough to justify a division of damages.

In Admiralty.

*Clark & Clark,* for the Nydia.

*M. D. W. Stevenson* and *L. I. Moore,* for the Moore.

SEYMOUR, J. This is a case of cross-libels for a collision which took place at a few minutes before 6 in the morning of the 13th of last December, near the mouth of the Neuse river. The steam-yacht Nydia, of which Dr. R. V. Pierce is owner, was lying at anchor near Garbacon shoal, in the channel of the river. It was not a fault that she lay there, for the river is wide and deep at this place, and there was abundant room to pass on either side of her; but being in a passage-way she was required by statute to keep both anchor light and anchor watch.

*Case as against Yacht.* She kept neither. As for the light, the yacht had been burning a bright light during the early part of the night, visible at a distance of several miles,—certainly of two miles,—but this light was in a lantern attached to a mast which was carried away in the collision. There was no one at the moment of the accident on the steamer's deck. The cook was up, in his galley making preparations for breakfast. The mate, whose watch it was, was in the mess-room, and probably asleep. He says he had been there but 10 minutes. Whether awake or asleep, he certainly was not at his post. A mariner testifies to having seen the light burning during his watch, which was from 7 to 11 at night. The mate says he looked at the light, and saw it, about an hour before the collision, and that it was shining on his feet all the time, so that he could not have missed it. On the deck of the schooner were three men,—the master on the quarter-deck, the mate on the lookout,

and a man at the wheel. Five minutes before they had been on the search for the buoy on Garbacon shoal, and must all have seen the Nydia's lights, had there been one. They all swear that the Nydia displayed no light. Their statement is corroborated by the fact that immediately upon the collision's occurrence the master of the schooner assigned the absence of such light as its cause; and, further, by the evidence of an unimpeached and impartial witness, Capt. R. P. Midyette, whose house is on the bank of the Neuse about two miles from where the Nydia lay, and who swears that he had observed her at anchor the day before; that at about 8 or 9 o'clock that night he had seen a brilliant light in her direction; that he was up between 4 and 5 the next morning, and looked towards the place where she lay at anchor, and saw no light there, from which he had inferred that she had gone away during the night. In this state of the evidence there can be no reasonable doubt but that the yacht had no anchor light, as well as no watch, at the time of the collision. The Nydia then is responsible in damages.

*Case as against the Schooner.* It is claimed that her lookout was negligent, and that therefore the loss must be divided. The schooner had left her anchorage three hours before. The captain, as has been stated, was on the quarter-deck, a hand at the wheel, and the mate on the lookout. On the other hand, the yacht was plainly at fault. All hands had turned in, including even the mate, whose watch it was, and whose duty required him to be on deck. It was an exceptionally dark night, the time more than an hour before sunrise, and before the first glimmering of dawn. The yacht, with its owner and his family, lay in the channel of a river, 25 miles from a frequented port, without watch and without light. The one boat up to the moment of the collision was fully doing its duty; the other plainly and hazardously negligent. Under these circumstances, the rule is that where one vessel has been guilty of a clear fault, there should also be clear evidence of a contributing fault on the part of the other vessel in order to divide damages. It should not be enough that the evidence makes the care and skill and good management of the other vessel doubtful. *The Comet*, 9 Blatchf. 329; *The Clarion*, 27 Fed. Rep. 128. The fault with which the schooner is charged is, not that she did not keep a lookout, but that the lookout ought to have seen the Nydia an instant or so sooner than he did. The master of the schooner says his mate did not signal the steamer until within 60 feet of her. Lieut. Winslow, an expert witness introduced and relied on by both sides, says that on a night such as the one described— a dark night, with the sky overcast—the lookout ought to have seen the Nydia at a distance of 200 or 300 yards, and that if he had seen her at 300 yards, the schooner ought to have cleared the yacht. It will be seen that this evidence leaves the possibility of avoiding the collision by any care on the schooner's part doubtful. Nor is this doubt removed by the further statement of the witness that if the schooner steered well, and was quick working, she could have done so in 200 yards. There is no evidence upon the capabilities of the Moore in these regards. Capt. Roberts estimates the distance at which the look-

out could have seen the Nydia at 150 yards. The Moore was sailing at a rate of 6 knots. She would have passed over the utmost distance at which, according to any testimony, her lookout could have seen the yacht, in some seconds more than a minute. It is uncertain at what precise distance the lookout actually sighted her, for I place no reliance upon Capt. Gaskill's estimate of 60 feet, founded, as it must have been, on his judgment of time, and not on sight. It is, however, certain that immediately upon seeing the Nydia the mate gave the only proper order, to put the wheel hard down, so as to bring the schooner up to the wind. Some instants would elapse between the first uncertain appearance of the yacht in the darkness of the water in front of him before the lookout could determine its exact location. A little time was required for giving and obeying his order. I would be unwilling to measure the seconds against the lookout of the schooner awake at his post, and exercising the judgment of a competent mariner in giving his orders in a case of emergency, in favor of a boat in a position in which the Nydia appears in this controversy. The lookout had no reason to expect to meet a boat at anchor in the channel of a river without a light. A light he would instantly have seen and avoided. In the case of *The Erastus Corning*, 25 Fed. Rep. 572, in which a steamer ran into a schooner at anchor without a light in the harbor of New Haven, the court says: "The officers and lookout of the steamer were watching carefully for lights, and saw none." A boat without a light on a dark night, and not in motion, is so difficult to see that it would seem unjust to hold a lookout responsible for not seeing it at the earliest second—I do not say minute—at which theoretically it may be visible. But were I so to hold, I would still be unable on this testimony to find the clear evidence that any vigilance and skill on the part of the schooner could have prevented the collision after the Nydia first became visible from her decks which would be enough, in view of the clear faults of the Nydia, to induce a court of admiralty to divide the damages. I therefore hold the schooner without fault.

There is no evidence on which I can find that the J. R. P. Moore is entitled to damages by the way of demurrage. The actual loss I find to be $100.

The libel of the owner of the Nydia is dismissed, with costs. The owners of the J. R. P. Moore are entitled to $100, and costs. Let there be judgment in accordance herewith.